## · Richards's Executor *versus* Richards.

*Assumpsit, evidence to support.—Consideration of contract, when insufficient.*

1. Where the plaintiff in an action of *assumpsit* seeks to support his claim against the estate of a decedent by the will of the deceased, he must show that it is made a debt by the terms of the will, or he cannot recover it as a debt.

2. Proof of assurances of pecuniary assistance and accompanying advice is not evidence of a contract, nor is compliance with such advice regarded in law as a legal consideration sufficient to support an action of *assumpsit*.

ERROR to the Common Pleas of *Clinton county*.

This was an action of *assumpsit*, brought by Samuel Richards against William Smith and Samuel Stover, executors of the last will and testament of Daniel Richards, deceased.

The plaintiff filed a declaration, containing the common counts and special counts, the first averring that "Daniel Richards in his lifetime, to wit, the thirty-first day of January, one thousand eight hundred and fifty-six, at, &c., in a certain discourse then and there held with the said plaintiff, in which discourse the said Daniel Richards represented to the said plaintiff that he the said Daniel Richards wished to procure a sum of money, to wit, the sum of $1500, and proposed to the said plaintiff that he the said plaintiff should make his note in writing, payable to the order of him the said Daniel Richards, sixty days after date, at the banking-house of Woods, McFarland & Co., for the said sum of $1500, and that he the said Daniel Richards would endorse the same, and procure the endorsement of others upon the said note, for the purpose of procuring the said sum of money, and further that he the said Daniel Richards would pay the amount of the said note to the holder at its maturity, &c. Whereupon the said plaintiff, confiding in the promise and agreement of the said Daniel Richards, then and there made his promissory note in writing in the words and figures following, to wit:"

"$1500.            "Lock Haven, Pa., January 31st 1856.

"Sixty days after date I promise to pay to the order of Daniel Richards, at the banking-house of Woods, McFarland & Co., fifteen hundred dollars, without defalcation, value received.

"DANIEL RICHARDS.            "SAMUEL RICHARDS.

"Endorsed—DANIEL RICHARDS, H. DEVLING & Co.,
            SAMUEL RICHARDS."

And averring that "the promissory note so made was discounted by the said Woods, McFarland & Co., and the sum of $1500 procured therefor paid to and for the use of Daniel Richards, at his special instance and request. And that neither Daniel Rich-

[Richards's Executor *v.* Richards.]

ards in his lifetime, nor William Smith and Samuel R. Stover, executors as aforesaid, since his death, the promise and assumption and agreement of the said Daniel Richards not regarding but contriving, &c., did not pay the said promissory note to the holders thereof at maturity, but suffered the same to be protested, whereupon the said plaintiff was then and there compelled to pay to Woods, McFarland & Co., to wit, the sum of $1528.83 for the said promissory note."

In the second count he averred that Daniel Richards, on the nineteenth day of February, in the year one thousand eight hundred and fifty-six, at the county of Clinton aforesaid, made his last will and testament in writing, wherein and whereby, amongst other things, he devised and bequeathed unto the said Samuel Richards as follows, to wit :—

" I give and bequeath to Samuel Richards, of Lamar township, all my real estate interest in Nittany Valley, and on the mountain between said Nittany Valley and Sugar Valley, consisting of all my right, title, and interest of any description of, in, and to the mansion farm, late the estate of William Richards, deceased, also all my interest as aforesaid in four certain tracts of unseated land, late the estate of the said William Richards, deceased, together with all and singular all my entire interest and property of every description, real, personal, and mixed, that I inherited or that belonged to me as one of the heirs of the said William Richards, deceased, together with all payments that I have made on said property since the death of said William Richards, or for which I am now bound or obligated to pay, the said Samuel Richards to have and to hold all the said real estate payments and obligations of payment as aforesaid, to him and his heirs for ever."

And averred that " the said promissory note hereinbefore recited was one of the items which Daniel Richards was bound and obligated to pay for and on account of the said property of the said William Richards, deceased; that William Smith and Samuel R. Stover were appointed the executors of the last will of Daniel Richards, and that he died without altering or revoking his said will as to the said bequest to the said plaintiff, and the said William Smith and Samuel R. Stover, the defendants, afterwards, to wit, the twenty-second day of February, in the year eighteen hundred and fifty-six, at, &c., took upon themselves the burden of the execution of the said will. That notwithstanding the bequest so to him made by the said Daniel Richards, of all which the said William Smith and Samuel R. Stover had notice, and by reason of which said promises the said William Smith and S. R. Stover, executors as aforesaid, then and there became liable to pay to the aforesaid plaintiff the said sum of $1528.83 so bequeathed by the said Daniel Richards as aforesaid, in considera-

[Richards's Executor *v.* Richards.]

tion whereof the said William Smith and Samuel R. Stover, executors as aforesaid, afterwards, to wit, the twenty-third day of July, one thousand eight hundred and fifty-six, at the county aforesaid, undertook and then and there faithfully promised the said plaintiff to pay him the said several sums of money when they should be thereunto afterwards requested, yet the said Daniel Richards in his lifetime, and the said William Smith and Samuel R. Stover, as executors as aforesaid, since the death of the said Daniel Richards, not regarding, &c."

To this declaration the defendant pleaded *non assumpsit* and payment with leave, &c.

On the trial the plaintiff, under exception, gave in evidence the will of Daniel Richards, deceased, which contained the clause set forth in the declaration above mentioned, for the purpose of showing that according to its provisions the note recited in the declaration was one of the "obligations of payment" for which the testator was bound.

The plaintiff called Robert Chatham, who testified as follows: —"Some time in the fall of 1855 Hugh Devling & Co. got a large amount of wheat from Samuel Richards during that fall. It was understood, while he was delivering the wheat, that he was preparing to go to the West. Daniel Richards came to our store; I asked him whether he knew Samuel Richards was going to the West? He said he did. I asked him if there was no way in which he could put Samuel in possession of the William Richards farm? He said he did not feel able to do so now without selling the homestead. I suggested how he could raise the balance; he did not seem satisfied; I proposed to do it on his paper at Williamsport; about one thousand; he did not seem satisfied with this idea; I referred him to an attorney, to see if it could be done, whoever his attorney might be; he came the next day; he came to town, and as he passed said if my suggestion was right he would try it; after he came back he seemed quite pleased, and said he would undertake it. Samuel Richards then went to the West, and made the purchase of the two shares of William Richards's property from Daniel Richards's brothers. Daniel Richards told me Samuel had $1200 or $1500 when he went West. I received a letter from Samuel Richards; I went up to Daniel Richards, and he showed me a letter he had got to the same effect; I took with me a blank check and a piece of paper; I finished a letter at Daniel Richards's, his reply to Samuel's letter. The balance of the purchase-money was $3300; I filled up the check (about 1st January 1856) for $3300, I dated it forward to 25th May; Daniel Richards signed the check payable to Samuel Richards; I endorsed it Hugh Devling & Co. on the back; I put it in a letter and sealed it up, and directed it to Samuel Richards; a short time after, perhaps ten days, Samuel

Richards and Daniel Richards, and ,a gentleman by name of Smead, son-in-law of one of the Richards in Ohio, came to our place together; it appeared they could not cash the check in the West; they wanted to get $1500 in money if it could be raised; this check was then cancelled, and there was a note made for $1500, at ninety days, drawn by Daniel Richards, payable to Samuel Richards, at Lock Haven Bank; I took the note in company with Samuel Richards, and went to Williamsport, in the expectation of getting the money. When we got there Lloyd was not at home; came back to Jersey Shore, that we might get it if Samuel failed to get it there. Came to Lock Haven, and Samuel Richards took the note, and went to Woods & McFarland. We went on up to Flemington from here; Daniel Richards and Smead were there, or came there soon after; the change was made, and this note was given.

" The bank wanted it Samuel Richards's note, making Samuel the drawer and Daniel the endorser; the other note torn up and this one made in place. Daniel Richards said it made no difference as to the change in the note, the object was to get the money, and he would try to meet the note.

" I gave the letter enclosing this check to Daniel Richards to take to the post-office; he said he would take it to the post-office; Daniel Richards said he did not care about changing the notes; he would meet it (the new note); I stayed and took my dinner there after we fixed up the papers the first time; he said he always intended to help Samuel Richards, and if he could get along with this matter it would come better to him now than at any other time; Daniel Richards owned a share in the William Richards farm, fourth part, and had the control of Lewis's share, and by purchasing those two shares of Joseph and James, they, he, and Samuel would have the whole of it; nothing further was said there; Daniel Richards died a short time afterwards, before the note matured."

The court below (Burnside, P. J.) instructed the jury "that there must be a sufficient consideration shown to support the promise alleged in plaintiff's narr. That the testimony of Robert Chatham in that point ·of view was the most important evidence in the cause. That if they believed the facts as detailed in the evidence of Mr. Chatham, there was a sufficient consideration to support the promise alleged to have been made by defendant to testator, and if so the plaintiff was entitled to recover. That the case depended upon the question whether there was a promise by Daniel Richards to *pay* the note or only to become surety for the plaintiff, and also whether there was any such promise as could be enforced, and left it to the jury to find what the promise was, saying to them that if there was a promise

10 Wr.—6

to *pay*, then if Mr. Chatham were believed there was a sufficient consideration proven to support the promise."

Under these instructions there was a verdict and judgment in favour of the plaintiff for $1743.56. Whereupon this writ was sued out by the defendant, for whom the admission in evidence of the will of Daniel Richards and the charge of the court, as above given, were assigned for error.

*Mayer & Ball*, for plaintiff.

*John W. Maynard*, for defendant.

The opinion of the court was delivered, November 16th 1863, by LOWRIE, C. J.—Of course the common counts in this declaration go for nothing, since there is a special count fitted to the circumstances of the case. The last count is also special, but it is incomplete in itself, and somewhat confused. It seems to be intended by it to bring in the will of the defendant's testator, not so as to claim a legacy, but as an additional circumstance in proof of the promise relied on in the previous special count. But no matter how the will was introduced, it was incompetent to complete the evidence of the contract relied on. The plaintiff below understands the will as bequeathing to him a sum sufficient to pay the balance of the purchase-money due by him on the William Richards farm. If so, then he must recover it as a legacy and not as a debt, unless he can also show that it is a debt. The will does not tend to show this.

No doubt there is evidence that the testator said he would pay that balance, and that he drew up notes that would have held him to it, if they had been passed as at first intended; but they were given up and destroyed, and therefore go for nothing, and the securities actually given do not hold him. We have nothing, therefore, but his advice to the plaintiff to buy the farm, and not move to the West, accompanied with an assurance that he would furnish him with the balance of the purchase-money. But this does not make a legal contract. Assurances of assistance accompanying kind advice are never intended as contracts. And conformance to advice is never intended to stand as a legal *consideration* for the kind assurances that accompany the advice, though it is a *motive* for their fulfilment. It would be exceedingly hurtful to the freedom of social intercourse to create even a suspicion in the public mind, that those kind offers of advice and assistance, which take place among friends and kindred, could be converted into contracts which the law would enforce. We do not discover any evidence of any legal consideration for the promise relied on here, and so the court ought to have

instructed the jury. And, looking at the generous provision made for the plaintiff by the testator in his will, we do not see that the plaintiff suffers by the testator having died before his assurances were ripe for performance.

      Judgment reversed, and a new trial awarded.